UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL ALCANTAR, | ) |
|                       Petitioner, | ) 20 C 5992 |
| vs. | ) Judge Gary Feinerman |
| GREG MORGENTHALER, Warden, Big Muddy River Correctional Center, | ) |
|                       Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Miguel Alcantar, an Illinois prisoner serving an eighteen-year sentence for predatory criminal sexual assault and aggravated criminal sexual abuse, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. The petition is denied, and the court declines to issue a certificate of appealability.

**Background**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court presumes that the state courts' factual findings are correct unless they are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Thurston v. Vanihel*, 39 F.4th 921, 929 n.2 (7th Cir. 2022) (noting that "§ 2254(e)(1) provides the mechanism for proving unreasonableness [under § 2254(d)(2)]") (alteration in original); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks

1

omitted). The Appellate Court of Illinois is the last state court to have adjudicated Alcantar's case on the merits. *People v. Alcantar*, 2018 IL App (1st) 162771-U (Ill. App. Oct. 29, 2018) (reproduced at Doc. 12-3), *appeal denied*, 116 N.E.3d 928 (Ill. 2019). The following sets forth relevant facts as that court described them, as well as the procedural background of the state criminal proceedings.

In 2012, Alcantar's daughter J.A.—then five years old—accused him of molesting her. Doc. 12-3 at 1. Alcantar was charged with predatory criminal sexual assault and aggravated criminal sexual abuse. *Ibid*. In 2014, J.A. told an interviewer with the Children's Advocacy Center that Alcantar had molested both her and her younger sister, N.A., in 2012. *Ibid*. Alcantar asked to subpoena N.A.'s medical records from a 2014 examination, and the state trial court denied his request. *Id*. at 1, 4.

Alcantar was convicted of both charges at a jury trial. *Id*. at 1 He appealed, arguing in pertinent part that the trial court denied his rights under the Sixth Amendment's Compulsory Process Clause by denying leave to subpoena N.A.'s medical records. Doc 12-1 at 35-39. The Appellate Court of Illinois affirmed, holding in pertinent part that the trial court did not abuse its discretion because the "records had no relevance to the charges against [Alcantar] involving J.A." Doc. 12-3 at 4. Alcantar filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois, reiterating his Compulsory Process Clause argument. Doc. 12-4 at 11-14. The PLA was denied. *People v. Alcantar*, 116 N.E.2d 928 (Ill. 2019). Alcantar petitioned for certiorari in the United States Supreme Court, again raising a Compulsory Process Clause argument. Doc. 12-6 at 10-15. The petition was denied. *Alcantar v. Illinois*, 140 S. Ct. 140 (2019).

Alcantar then filed in this court a petition for a writ of habeas corpus. Doc. 1. He claims that he "was deprived of due process under the fourteenth amendment when the [state trial] court refused to conduct an in camera inspection of [N.A.'s] potentially exculpatory medical records in the possession of the prosecution." Doc. 1 at 13. More specifically, Alcantar submits that *Brady v. Maryland*, 373 U.S. 83 (1963), required the prosecution to turn over N.A.'s 2014 medical records upon his request, while *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), required the trial court to examine those records *in camera*. Doc. 1 at 15-17. Alcantar suggests that the medical records may indicate "that J.A. had fabricated another incident of sexual abuse." Doc. 1 at 16-17; *see also* Doc. 12-14 at 238-240 (Alcantar's state court motion for a subpoena for N.A.'s medical records). "In the alternative," Alcantar claims that "should the appellate court's decision as to relevance [of the records] … be construed as a factual finding, it was clearly incorrect," and "this court should allow the issuances of subpoenas for the relevant records and conduct an evidentiary hearing to determine whether the suppression of these materials violated" his rights. Doc. 1 at 17.

## Discussion

The Warden argues that Alcantar procedurally defaulted his Fourteenth Amendment due process claim by failing to present it to the state courts. Doc. 11 at 9-14. "A federal court will not hear a state prisoner's habeas claim unless the prisoner has first exhausted his state remedies by presenting the claim to the state courts for one full round of review." *Crutchfield v. Dennison*, 910 F.3d 968, 972 (7th Cir. 2018) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)). A prisoner can satisfy this requirement either on direct appeal or on post-conviction review. *See Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). In Illinois, exhaustion requires presenting the claim to the Supreme Court of Illinois. *See O'Sullivan v. Boerckel*, 526

U.S. 838, 845-46 (1999). "If a petitioner fails to properly assert a federal claim at each level in the state court system, the claim is procedurally defaulted." *Sanders v. Radtke*, __ F.4th __, 2022 WL 3974271, at *5 (7th Cir. Sept. 1, 2022).

After the Warden raised procedural default in his answer, Doc. 11 at 9-14, Alcantar moved this court to stay these proceedings to allow him "to return to the Illinois state courts to seek a supervisory order reinstating the [state court] appeal so that the *Brady* claim can be added," Doc. 18 at 2. This court granted the motion to stay over the Warden's objection. Doc. 22. Alcantar then sought a supervisory order from the Supreme Court of Illinois that, as he put it, would permit him "to file an amended brief [with the state appellate court] clarifying that the [trial] court erred by denying his motion to issue a subpoena for [N.A.'s] medical records not only on the grounds of denial of his right to compulsory process under the sixth amendment to the United States Constitution but also on the grounds of denial of his fourteenth amendment rights to due process under *Brady v. Maryland*, 373 U.S. 83 (1963)." Doc. 24-1 at 1. The state supreme court denied Alcantar's motion, Doc. 26-1, and he does not contend that his unsuccessful motion satisfied his obligation to present his due process claim to each level of the state judiciary, Doc. 31 at 3 (arguing only that the state supreme court's denial of his motion "is not dispositive" against him).

Given this procedural backdrop, Alcantar failed to assert his due process claim at each level of the state judiciary. True enough, his appellate court brief and PLA discussed N.A.'s medical records. *E.g.*, Doc. 12-1 at 35-39; Doc. 12-4 at 11-14. Both filings, however, argued that the trial court's denial of his motion to subpoena the medical records violated his Sixth Amendment compulsory process rights. That claim is legally distinct from a Fourteenth Amendment due process claim under *Brady* or *Ritchie*.

4

Alcantar acknowledges that "the body of the [appellate court] brief and the [PLA] both discussed the sixth amendment's compulsory process clause." Doc. 31 at 2. That acknowledgement is consistent with his motion for a supervisory order, which conceded that although his appellate court brief "noted that the defense at trial had sought disclosure of the exculpatory material under *Brady*, the body of the brief cited only the sixth amendment in arguing that the [trial] court had erred." Doc 24-1 at 2. Nonetheless, citing *Ritchie*, Alcantar contends here that he adequately presented his due process claim in state court because "the United States Supreme Court has made clear, in this context, that the analysis under [the Due Process Clause and the Compulsory Process Clause] is very similar, if not identical." Doc. 31 at 2.

This argument fails. As an initial matter, Alcantar misapprehends *Ritchie*, where the Supreme Court held that "Ritchie's claims more properly are considered by reference to due process," and that it "need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment." 480 U.S. at 56. But even if *Ritchie* suggests—as Alcantar now contends—that the due process and compulsory process analyses are "very similar, if not identical," Doc. 31 at 2, the underlying rights are not the same, so he cannot have exhausted his due process claim by asserting a compulsory process claim in state court. See *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) ("Mere similarity of claims is insufficient to exhaust.") (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

Nor is it sufficient that Alcantar's appellate court brief and PLA stated—without elaboration—that "[t]he trial court was wrong" to deny his motion "for the disclosure of [N.A.'s medical] records as exculpatory material evidence under *Brady v. Maryland*, 373 U.S. 83 (1963)." Doc. 12-1 at 35; Doc. 12-4 at 11. "[P]assing reference to a constitutional issue" does

5

not comprise fair presentment to the state courts. *Chambers*, 264 F.3d at 738 (internal quotation marks omitted). Indeed, Alcantar had reason to know that any purported *Brady* claim required greater articulation. The State's appellate court brief argued that Alcantar had "clearly abandoned" and forfeited any *Brady* claim by failing to support it with "argument and relevant legal authority." Doc. 12-2 at 37. Alcantar did not file a reply brief in the appellate court, Doc. 11 at 7 n.1, 11, and the appellate court's opinion did not discuss (or even cite) *Brady*. Doc. 12-3. And yet in his PLA, Alcantar did not argue that the appellate court had failed to recognize a *Brady* claim that he had pressed in that court, Doc. 12-4—demonstrating that, at the time, even Alcantar did not believe that he had pressed such a claim. After all, if Alcantar thought that the appellate court had ignored a properly presented *Brady* claim, he surely would have alerted the state supreme court in his PLA.

As for *Ritchie*, Alcantar maintains that "there is no such thing as a '*Ritchie*' claim: *Ritchie* is simply an application of *Brady* which requires a trial judge to review sensitive materials *in camera* when a *Brady* claim is made." Doc. 31 at 2. Thus, in Alcantar's own understanding of the pertinent case law, his failure to preserve a *Brady* claim in state court necessarily means that he failed to preserve any *Ritchie* claim.

Alcantar may overcome his procedural default either by demonstrating cause and prejudice or by showing that this court's failure to consider his due process claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). He does not argue cause and prejudice, Doc. 31, thus forfeiting any such argument. *See Perruquet v. Briley*, 390 F.3d 505, 514-15 (7th Cir. 2004) (explaining that the petitioner bears the burden of demonstrating an exception to procedural default); *Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) ("[P]rocedural default will be

excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice. [The petitioner], however, does not make this argument and we will not make it for him.") (citation omitted).

Alcantar does invoke the fundamental miscarriage of justice gateway for considering defaulted claims. Doc. 30 at 2; Doc. 31 at 3. "The fundamental miscarriage of justice standard erects an extremely high bar for the habeas petitioner to clear. It applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013); *see also Blackmon v. Williams*, 823 F.3d 1088, 1101 (7th Cir. 2016) (explaining that the standard "is demanding and permits [federal court] review only in the extraordinary case") (internal quotation marks omitted). "To pass through th[is] actual-innocence gateway to a merits review of … procedurally barred claim[s], [a] petitioner must have 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "'New evidence' in this context does not mean 'newly *discovered* evidence'; it just means evidence that was not presented at trial." *Ibid*. "The petitioner must prove, based on this evidence, that it was more likely than not that no jury would have convicted him at trial were the new, exculpatory evidence available." *McDowell*, 737 F.3d at 483. "[B]ecause an actual-innocence claim [necessarily] involves evidence the trial jury did not have before it," a federal habeas court must evaluate "how reasonable jurors would react to the overall, newly supplemented record." *Jones*, 842 F.3d at 461 (internal quotation marks omitted).

7

Alcantar's reply brief states, referring to his motion for leave to file an amended habeas petition, that he "believe[d] he [would] be able to make a showing of actual innocence." Doc. 31 at 3. His motion for leave to amend, in turn, states his "belie[f] that by January 17, 2022, he [would] be able to produce new evidence of innocence and [could] file an amended habeas petition by that date." Doc. 30 at 2. The court granted Alcantar's motion, giving him until January 17, 2022 to file an amended habeas petition. Doc. 32. Alcantar failed to do so, and after that deadline passed, the court indicated that the matter was fully briefed and taken under advisement. Doc. 33. (Alcantar did, however, file a reply brief in support of his original petition. Doc. 31.) Alcantar has thus forfeited any fundamental miscarriage of justice argument.

Even putting aside forfeiture, Alcantar fails to satisfy "extremely high bar" for successfully invoking the fundamental miscarriage of justice gateway to federal habeas review. *McDowell*, 737 F.3d at 483. In initially seeking N.A.'s medical records in state court, Alcantar argued that they might describe statements and/or physical evidence that contradicted or failed to support J.A.'s assertions that he had molested her and N.A., thereby undermining J.A.'s reliability. Doc. 12-14 at 238-240. The strength of such evidence (assuming the records contained it) is debatable. The records at issue were generated in 2014, two years after J.A.'s initial assertion that Alcantar had molested her. Doc. 12-3 at 1. It is doubtful that a jury would have found it significant that there were inconsistencies between J.A.'s 2012 statements (made when she was five years old) and statements she made two years later. Indeed, in returning a guilty verdict, Alcantar's jury necessarily rejected his submission that J.A.'s account of events was unreliable because her "statements [were] so internally inconsistent." Doc. 12-12 at 100 (closing argument). At bottom, the court cannot say "that it was more likely than not that no jury would have convicted [Alcantar] at trial" had he possessed N.A.'s medical records. *McDowell*,

737 F.3d at 483. Alcantar thus fails to satisfy the fundamental miscarriage of justice exception to procedural default.

As noted, Alcantar also claims that "should the appellate court's decision as to relevance [of N.A.'s medical records] … be construed as a factual finding, it was clearly incorrect." Doc. 1 at 17; *see* 28 U.S.C. § 2254(d)(2) (permitting habeas relief where a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"); *id*. at § 2254(e)(1) (providing that a habeas petitioner bears "the burden of rebutting the presumption of correctness" that attaches to a state court's factual determinations "by clear and convincing evidence"). This claim fails. Alcantar's habeas petition airs this perfunctory argument in a two-sentence paragraph that does not cite, let alone address, precedent engaging with the deferential standards of § 2254(d)(2) and § 2254(e)(1). Doc. 1 at 17. He cites no authority to support his claim that the appellate court's relevance determination was "based upon an unreasonable determination of the facts," *id*. at 13, and "was clearly incorrect," *id*. at 17, or his earlier assertion that "[t]he possibility that J.A. had fabricated another incident of sexual abuse was obviously relevant to her credibility," *id*. at 16-17. Alcantar has thus forfeited any fact-based challenge to the state appellate court's relevance determination. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

## Conclusion

Alcantar's habeas petition is denied. Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Where, as here, "the district court denies a habeas petition on procedural grounds," a

certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Anderson v. Litscher*, 281 F.3d 672, 673-74 (7th Cir. 2002).

This court's denial of Alcantar's habeas petition relies on settled precedents and the application of those precedents to his petition does not present difficult or close questions, and so the petition does not meet the standard for granting a certificate of appealability. This court therefore denies a certificate of appealability.

September 16, 2022

United States District Judge